United States District Court
Southern District of Texas
**ENTERED**
August 08, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PAMELA S QUICK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:16-CV-109 |
| | § | |
| WAL-MART STORES, INC.; dba | § | |
| WALMART, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Plaintiff Pamela S. Quick ("Quick") instituted this action against her former employer Defendant Wal-mart Stores, Inc. ("Walmart"), bringing Family and Medical Leave Act ("FMLA") interference and retaliation claims and age, sex, and disability discrimination/failure to accommodate claims under the Texas Labor Code. *See* First Am. Pet. (Dkt. No. 1-1 beginning at 14 of 21) ¶¶ 9–11. On June 2, 2017, this Court entered an Order on Walmart's motion for summary judgment. *See* Mem. and Order, Dkt. No. 25. The Court granted Walmart's motion as to Quick's FMLA interference, FMLA retaliation, and sex discrimination claims, and denied Walmart's motion as to Quick's age discrimination claim. *See id.* at 28. This Court declined to rule on Walmart's motion for summary judgment on the issue of Quick's disability discrimination/failure to accommodate claims under Chapter 21 of the Texas Labor Code (the Texas Commission on Human Rights Act or "TCHRA"), *see* Tex. Lab. Code § 21, finding that the Court needed additional briefing and evidence to determine whether Quick could establish a prima facie case, and ordered supplemental briefing from both parties. *Id.* at 21–22, 28.

On June 28, 2017, Quick filed her supplemental briefing. Dkt. No. 26. On July 21, 2017, Walmart filed its response brief. Dkt. No. 28. Quick did not file a reply brief. For the reasons stated below, the Court finds that Quick has not met

her burden to establish a prima facie case for her claims of disability discrimination or failure to accommodate under Texas state law.[1]

### I. Disability Discrimination Claim

Quick brings forward a disability discrimination claim under the TCHRA. *See* First Am. Pet. ¶ 8; Dkt. No. 21 at 8. The TCHRA provides:

> An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

Tex. Lab. Code § 21.051.

"The TCHRA, like the [Americans with Disabilities Act ("ADA")], prohibits employment-based discrimination grounded in an individual's disability. Given the similarity between the ADA and the TCHRA, Texas courts 'look to analogous federal precedent for guidance when interpreting the Texas Act.' " *Rodriguez v. ConAgra Grocery Prod. Co.*, 436 F.3d 468, 473 (5th Cir. 2006) (quoting *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999)) (other citations omitted); *see also Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 925 (S.D. Tex. 2002) ("The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment. Federal law prohibiting disability discrimination by employers is found in the . . . [ADA], and thus courts must look to this statute in interpreting the TCHRA.") (citations and quotations omitted). Therefore, though Quick's claim is brought under the TCHRA, the Court's analysis of Quick's claim is conducted by examining federal precedent interpreting the ADA.

---

[1] The facts of this case are described in detail in this Court's June 2, 2017, Memorandum and Order, Dkt. No. 25 at 1–8. Accordingly, the Court declines to recite them herein.

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2016). A disability is "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) (quoting 29 C.F.R. § 1630.2(g)). To defeat summary judgment, Quick must create a fact issue showing that she "(1) [has] a mental or physical impairment that (2) substantially limits (3) a major life activity." *Dupre v. Charter Behavioral Health Sys. Of Lafayette, Inc.*, 242 F.3d 610, 613 (5th Cir. 2001); *see also Pedroza v. Autozone, Inc.*, 536 F. Supp. 2d 679, 690 (W.D. Tex. 2008). Courts are to make an individualized determination of whether an employee's impairment constitutes a disability. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999).

This Court previously declined to rule on Walmart's motion for summary judgment on Quick's disability claims, finding that it did not have adequate briefings or evidence before it regarding whether Quick had a disability during her employment with Walmart. The Court stated:

> [T]he ADA requires a case-by-case determination of the nature of the employee's impairment. *Griffin*, 661 F.3d at 222. "An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person." *Id.* (quoting *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 199 (2002)).
>
> To be considered a disability, an injury or impairment "must substantially limit a major life activity." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995). Put another way, "neither the Supreme Court nor [the Fifth Circuit] has recognized the concept of a per se disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Waldrip*, 325 F.3d at 656.[2]
>
> * * *
>
> The Fifth Circuit has held that lifting and reaching constitute major life activities. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 725 n.7 (5th Cir. 1995) (citing 29 C.F.R. § 1630, Appendix to Part 1630—

---

[2] Referring to *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003).

Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(1)). Therefore, when a plaintiff claims substantial limitation of his ability to reach and lift, the reviewing court must examine how the plaintiff can perform these functions in the context of the normal activities of daily living. *Pedroza*, 536 F. Supp. 2d at 692 (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120 (5th Cir. 1998) (citations omitted)). While Quick's work release conditions from March 2014 may support her contention that she was faced with a substantial limitation, her briefing does not explain how she performs lifting functions in the context of normal activities of daily living. *Cf. Pedroza*, 536 F. Supp. 2d at 692 ("To provide an analytical backdrop, Pedroza states that he is not able to lift his daughter.").

In *Pryor v. Trane Co.*, 138 F.3d 1024 (5th Cir. 1998), the Fifth Circuit found that a plaintiff's substandard ability to lift from shoulder to overhead did not constitute a substantial limitation of a major life activity. *Id.* at 1027. In *Dutcher*, the plaintiff presented evidence that she could "do lifting and reaching as long as she avoid[ed] heavy lifting and repetitive rotational movements," *Dutcher*, 53 F.3d at 726, and testified that she "[had] trouble picking up little things from the floor" and "holding things up high or real tight for long periods of time." *Id.* at 726 n.11. After analyzing this evidence, the Fifth Circuit held that as a matter of law, "a jury could not find that her impairment substantially limits life activities on this basis." *Id.*

In *Ray v. Glidden*, 85 F.3d 227 (5th Cir. 1996), the Fifth Circuit held that an ADA plaintiff was not substantially limited in a major life activity even though he could not lift heavy objects and his physician had recommended that he be limited to lifting objects weighing from five to ten pounds. *Id.* at 229. The Court reasoned that "[t]o determine whether a person is substantially limited in a major life activity other than working, we look to whether that person can perform the normal activities of daily living." *Id.* (citations omitted). The Court found that the plaintiff was not substantially limited because he "c[ould] lift and reach as long as he avoid[ed] heavy lifting." *Id.* Several unpublished Fifth Circuit cases reinforce this holding. *See, e.g., Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, at *8 (5th Cir. Sept. 25, 2001) (unpublished) (holding that a plaintiff who could not lift items over twenty pounds was not substantially limited); *Moody v. M.W. Kellogg Co.*, No. 98-20757, 1999 WL 153032, at *3 (5th Cir. Mar. 8, 1999) (unpublished) (holding that a plaintiff who could not lift objects over ten pounds was not substantially limited).

Quick premises her lifting disability on being restricted to lifting no more than ten pounds, then twenty pounds, and then, again, ten pounds. Dkt. No. 21 at 14. However, the Court has no "analytical backdrop," *see Pedroza*, 536 F. Supp. 2d at 692, through which to make a decision as to whether Quick was substantially limited in a major life

> activity when she could not lift heavy objects. *Cf. Ray*, 85 F.3d at 229. In light of the fact that courts are "to make an individualized determination of whether an employee's impairment constitutes a disability," *see Sutton*, 527 U.S. at 483, the Court finds that supplemental briefing and summary judgment evidence is appropriate on whether Quick was disabled within the meaning of TCHRA.

Mem. and Order (June 2, 2017), Dkt. No. 25 at 17–22.

Quick's supplemental briefing argues that she "provided the analytical backdrop to her restrictions" and that she had restrictions "walking, standing, lifting, bending, twisting, and working." Dkt. No. 26 at 5–6. To support the supplemental briefing, Quick attaches a recent affidavit, dated June 28, 2017, which provides the following details:

> As a result of the on-the-job injury, I experienced severe radiating pain and numbness in bilateral lower extremities which substantially limited the following activities of daily living: pushing, pulling, lifting, carrying, twisting, climbing, walking, standing, bending and working.
> In addition to my lifting restrictions, the pain and numbness in the bilateral lower extremities restricted: the condition of my daily walking posture that restricted the duration of time I could stand or walk; my ability to cook; my ability to twist and extend my torso as I prepared for the day including getting dressed; my ability to climb a ladder; my ability to bend over that prevented me gardening or enjoying a bath and restricted me from lacing up my shoes; my ability to sleep on my sides or back interfering with a restful night[']s sleep; and my ability when compared to most people in the general population to perform activities of daily living.

Quick Aff., Dkt. No. 26 Ex. L ¶¶ 7–8.

This information provided in the affidavit coupled with the work releases provided in previous briefings constitute the full record on Quick's argument that her impairments qualify as a disability. The Court notes the following timeline of Quick's doctor's notes, as discussed in this Court's June 2, 2017, Order:

- Mar. 18, 2014:   No heavy lifting greater than ten pounds if still having back pain, otherwise no restrictions.[3]
- Mar. 25, 2014:   No lifting greater than twenty pounds.[4]
- June 18, 2014:   Released to return to work with no restrictions.[5]
- Dec. 4, 2014:    Quick alerts Karen Neimeier of back pain and goes on leave.
- Dec. 30, 2014:   No lifting over ten pounds for thirty-four weeks.[6]

Quick's affidavit does not provide the Court with specific information about when her limitations occurred in relation to the timeline of her restrictions 2014. For example, Quick has not specified whether the impairments described in her affidavit occurred from June 18, 2014 to December 4, 2014, when she was working without any medically imposed lifting restrictions.

Furthermore, the summary judgment evidence does not provide the Court with specifics on the extent of Quick's limitations—which is crucial to the individualized inquiry necessary for disability discrimination claims. *See Sutton*, 527 U.S. at 483. For example, Quick claims that she is restricted in the duration of time that she can stand or walk, but does not provide evidence as to what that duration is. *See Weems v. Dallas L.S.D.*, No. 3:15-CV-2128-L, 2017 WL 2306526, *6 (N.D. Tex. May 26, 2017) (holding that while plaintiff's doctor's note stated plaintiff was limited in his ability to walk and stand, neither the plaintiff nor his doctor provided any specifics and, accordingly, the court could not find plaintiff was disabled).

---

[3] *See* note from Walmart's plan doctor, Dr. Mobley ("Mobley"). Dkt. No. 20 Ex. A(3).
[4] *See* Temporary Alternative Duty Assignment, Dkt. No. 20 Ex. 4 (stating that "Dr. Mobley has released you to return to work with the following restrictions: May not lift/carry objects more than 20 lbs.").
[5] *See* Dkt. No. 20 Ex. A(5) (signed by Dr. Donna McMann ("McMann") and stating that Quick "[m]ay return to work with no restrictions on date 6/18/14"); *see also* Quick Dep., Dkt. No. 20 at 52:24–53:8 (stating that McMann is an associate of Mobley).
[6] *See* Dkt. No. 21 Ex. J. This exhibit is a page of physician notes indicating: Quick "may return to work" and "no lifting [greater than] 10 [pounds] 34/wk." Walmart denies that it ever received this notice of restriction from Mobley. Dkt. No. 28 at n.1.

In *Dupre*, Fifth Circuit analyzed whether the plaintiff's restrictions of having to rise from sitting every hour and walk around and having to walk or sit for a while for every hour she stood represented a substantial limitation of a major life activity. *Dupre*, 242 F.3d at 614. The *Dupre* court cited to a Second Circuit opinion which held that police officers who had difficulty standing for any period of time, and who had to move around after sitting for too long, did not present "sufficiently substantial" impairments "as compared with the average person's ability." *Id.* (quoting *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998)). Additionally, the *Dupre* court looked to a Third Circuit case where an employee was claiming disability based on his need to take breaks every hour from standing. *Id.* (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3d Cir.1999)). The Third Circuit reasoned:

> Because Taylor can stand and walk for fifty minutes at a time, and can continue for longer periods if he takes a break every hour, he can carry out most regular activities that require standing and walking, even though he may not be able to perform Pathmark's jobs without accommodation. We conclude that his ability to walk and stand is not significantly less than that of an average person.

*Taylor*, 177 F.3d at 187–88.

In *Dupre*, the Fifth Circuit concluded that "Dupre's ability to sit or stand in one place for up to one hour at a time before having to walk around makes clear that the 'condition, manner, or duration' under which she was able to sit or stand was not significantly restricted as compared with the average person." *Dupre*, 242 F.3d at 614. The Fifth Circuit found that the restrictions of (1) having to rise from sitting every hour and walk around and (2) having to walk or sit for a while for every hour spent standing did not substantially limit "the major life activities of standing and sitting." *Id.*

In contrast, in *Jenkins v. Cleco Power, LLC*, the Fifth Circuit analyzed a case where a plaintiff claimed that his leg injury resulted in restrictions that substantially limited his ability to climb, walk, and sit. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir.2007). In that case, the plaintiff was climbing a

utility pole when it broke, causing him to fall to the ground and fracture his left femur. *Id.* at 311. The fracture required extensive surgery and resulted in some permanent deformity to the plaintiff's leg, difficulty with motion and weight bearing, locking of his leg, and limitations to his physical capacity to perform several job-related tasks, including the ability to sit for extended periods. *Id.* at 311–12. At trial, the parties presented evidence that the plaintiff could, with intermittent breaks, only sit for up to three hours a day. *Id.* at 312. Moreover, testimony emerged to demonstrate that the plaintiff's sitting during his computer training was difficult and that others noticed his discomfort. *Id.* Based upon these facts, the Fifth Circuit held that "[b]ecause over the course of the day Jenkins' ability to sit is significantly more restricted than the average person, [ ] the court clearly erred in finding that Jenkins is not disabled within the meaning of the ADA." *Id.* (internal citations omitted).

In *Pedroza*, the court found that though the plaintiff claimed that the limitation on his ability to sit and stand constituted a substantial limitation of a major life activity, the plaintiff had not met his burden because

> To support his claim, Pedroza alleges that he is "restricted in his ability to stand for more than a few hours," that he "should alternate between sitting and standing at regular intervals," and that he "cannot sit for more than three or four hours without feeling pain." Further, his most recent work release form, signed by Dr. Reeves on July 12, 2005, does indicate that Pedroza should alternate sitting and standing every four (4) hours and limit standing to four (4) hours per day.
>
> * * *
>
> Based upon these precedents [of *Dupre* and *Jenkins*], the Court finds that Pedroza is not disabled on account of his standing and sitting restrictions. First, the limitation of Pedroza's standing to only four hours per day, and alternating standing and sitting every four hours, is significantly less stringent than the restriction in *Dupre*, where the plaintiff had to walk or sit for a while after every hour that the plaintiff spent standing. If the Fifth Circuit found that the restriction in *Dupre* did not embody a substantial limitation under the ADA, then Pedroza's restrictions must also fail.

*Pedroza*, 536 F. Supp. 2d at 691 (internal citations omitted).

Quick's summary judgment briefings and attached exhibits provide less evidence that her impairments constitute a substantial limitation of a major life activity than the evidence presented in *Dupre* and *Pedroza*. First, here, there are no medical records indicating that Quick has restrictions standing or walking. The only specifics that the Court has to determine how Quick's impairments affect her ability to perform functions in the context of the normal activities of daily living, *see Sherrod*, 132 F.3d at 1120; *Pedroza*, 536 F. Supp. 2d at 692, are those provided in her affidavit. While Quick avers that she was "substantially limited [in] . . . pushing, pulling, lifting, carrying, twisting, climbing, walking, standing, bending, and working," *See* Dkt. No. 26 Ex. L at ¶ 7, Quick has not met her burden to show, for instance, that her case is more like *Jenkins* (who could only sit for up to three hours a day and thus disabled) than like *Dupre* (could sit or stand in one place for up to one hour at a time and thus not disabled). Because the Court cannot infer how much time Quick can stand or walk, the Court concludes that Quick has not met her burden to show that her limitations in standing constitute a substantial limitation of a major life activity.

The other averments contained in Quick's affidavit—that her impairments prevent or restrict her ability to cook; to twist and extend her torso as she prepared for the day, including getting dressed; to climb a ladder; to bend over that prevented her from gardening, enjoying a bath, or from lacing up her shoes; and to sleep on sides or back—provide the Court with slightly more detail. However, even accepting these limitations to Quick's lifting and bending as true, Quick's averments still do not reach the required level of significance to constitute a disability under Fifth Circuit precedent. In making this finding, the Court follows Fifth Circuit case law regarding what constitutes a substantial impairment or restriction to the major life activity of lifting. Because in *Pryor*, the Fifth found that a plaintiff's substandard ability to lift from shoulder to overhead did not constitute a substantial limitation of a major life activity, *see* 138 F.3d at 1027, Quick would need to show how her case can be differentiated from that of *Pryor*. Further, though in *Dutcher* the plaintiff testified that she "[had] trouble picking up little things from the floor" and "holding

things up high or real tight for long periods of time," the Fifth Circuit held that as a matter of law, "a jury could not find that her impairment substantially limits life activities on this basis." *See Dutcher*, 53 F.3d at 726 & n.11. In this case, Quick has not made specific averments as to how her lifting restrictions affected her daily life.

Finally, turning again to *Ray v. Glidden*, a case described by this Court in detail in its June 2, 2017 Order, the Fifth Circuit in that case held that an ADA plaintiff was not substantially limited in a major life activity when he could not lift heavy objects and his physician had recommended that he be limited to lifting objects weighing from five to ten pounds. *Ray v. Glidden*, 85 F.3d at 229. The court found that the plaintiff was not substantially limited because he "c[ould] lift and reach as long as he avoid[ed] heavy lifting." *Id.* Because a number of Fifth Circuit cases reinforce this holding,[7] and Quick has not distinguished her case from those, the Court finds that the only evidence as to Quick's lifting restrictions—the physician restrictions from 2014 stating that she should not lift objects greater than ten and twenty pounds—is insufficient to demonstrate that Quick was substantially limited in a major life activity.

The Court concludes that, under Fifth Circuit binding precedent, Quick has not met her burden to demonstrate that she is a qualified individual with a disability under the ADA or the TCHRA.

## II.   Reasonable Accommodation Claim

Employers also violate the TCHRA if they "fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability . . . unless the [employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business." Tex. Lab. Code § 21.128(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental

---

[7] *See, e.g., Shannon v. Henderson*, No. 01-10346, 2001 WL 1223633, at *8 (5th Cir. Sept. 25, 2001) (holding that a plaintiff who could not lift items over twenty pounds was not substantially limited); *Moody v. M.W. Kellogg Co.*, No. 98-20757, 1999 WL 153032, at *3 (5th Cir. Mar. 8, 1999) (holding that a plaintiff who could not lift objects over ten pounds was not substantially limited).

limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A); *see also Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). To prevail in a failure-to-accommodate claim, a plaintiff must show the following statutory elements: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist*, 730 F.3d at 452 (footnote omitted).

Because Quick has not met her burden to show that she is a "qualified individual with a disability," per the analysis in Section I, *supra*, she has not met her burden to show that she meets the one of the threshold inquiries for a failure to accommodate claim. The Court therefore finds that summary judgment on this issue in favor of Walmart is appropriate.

### III.   Conclusion

For the aforementioned reasons, the Court supplements its Memorandum and Order of June 2, 2017, to **GRANT** Walmart's motion for summary judgment, Dkt. No. 20, on Quick's disability discrimination and reasonable accommodation claims.

SIGNED this ___8___ day of August, 2017

Hilda Tagle
Senior United States District Judge