United States District Court
Southern District of Texas
**ENTERED**
August 11, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| PAMELA S QUICK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:16-CV-109 |
| | § | |
| WAL-MART STORES, INC.; dba WALMART, | § § | |
| | § | |
| Defendants. | § | |

# ORDER

BE IT REMEMBERED that on this 11th day of August, 2017, the Court sua sponte reconsidered its June 2, 2017, denial of Defendant Wal-mart Stores, Inc.'s ("Walmart") motion for summary judgment on Plaintiff Pamela S. Quick ("Quick's) age discrimination claim. *See* Mem. and Order, Dkt. No. 25; *see also* Def.'s Mot., Dkt. No. 20. The Court therefore vacates in part its previous Order pursuant to its authority under Federal Rule of Civil Procedure 54(b).

## I. Reconsideration of Summary Judgment Order

Federal Rule of Civil Procedure 54(b) allows the Court to revise certain interlocutory orders prior to entry of judgment that terminates the action. Rule 54(b) states, "[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). "Rule 54(b) authorizes a district court to reconsider and reverse its prior rulings on any interlocutory order 'for any reason it deems sufficient.'" *United States v. Renda*, 709 F.3d 472, 479 (5th Cir. 2013) (citing *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010)); *see, e.g.*, *Hill v. New Orleans City*, No. CV 13-2463, 2016 WL 4180809, at *7 (E.D. La. Aug. 8,

2016). The Fifth Circuit "has explained that when a district court rules on an interlocutory order, it is 'free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Saqui*, 595 F.3d at 210–11 (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)).

This broad procedural power, reviewed only for abuse of discretion, should be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays. *See Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993); *see also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.1 (2d ed. 2016).

## II.    Age Discrimination Claim[1]

In her complaint, Quick alleges that Walmart discriminated against her based on her age in violation of Chapter 21 of the Texas Labor Code (the Texas Commission on Human Rights Act or "TCHRA"), *see* Tex. Lab. Code § 21, when it failed to provide her reasonable accommodation and terminated her. *See* First Am. Pet. ¶ 8, Dkt. No. 1-1 (beginning on 14 of 21).[2]

In the June 2, 2017 Memorandum and Order, this Court evaluated Walmart's motion for summary judgment on Quick's age discrimination claim. The undersigned granted summary judgment as to Quick's failure to accommodate

---

[1] The facts of this case are recounted in-depth in this Court's June 2, 2017 Memorandum and Order. Mem. and Order, Dkt. No. 25. Accordingly, the Court declines to recite the facts herein.
[2] Quick alleged:
> On numerous occasions during the period that Plaintiff was denied the reasonable accommodation of restricted lifting, she was seeking different positions within the store that were less physical in their job duties. In December 2014, a younger male employee was given light duty when he broke his finger. In another instance of differential treatment, a younger male employee was allowed to sweep floors, shred papers and answer phones while he recuperated from a broken toe. All of the above facts document discrimination based upon sex, age, and disability. Defendant ignored the requests for reasonable accommodation and in a retaliatory fashion terminated Plaintiff because she was damaged goods.

First Am. Pet. ¶ 8, Dkt. No. 1-1 (beginning on 14 of 21); *see also* Pl.'s Resp. Br., Dkt. No. 21 at 20–21 (arguing that Walmart's reasons for terminating Quick were pretextual and that the termination was due to "discrimination based on disability, sex, and/or age").

claim, holding that a transfer to a light-duty assignment would have been a mere lateral transfer, and therefore was not an "adverse employment action."[3] *See* Mem. and Order, Dkt. No. 25 at 24–25.

This Court did find, however, that Quick created a genuine fact issue for trial on her age discrimination claim based on her termination. This Court concluded that "Quick has . . . produced more than a scintilla of evidence through the deposition of Lopez that Walmart sought younger employees for the meat market." *Id.* at 25. This Court cited the deposition of Antonio Lopez ("Lopez"), Produce Manager, who testified in his deposition that Luis Leija ("Leija"), the Store Manager, "pulled me over to the side and told me that I would basically have to start hiring younger people . . . because they're a lot faster, quicker [and] don't have to deal with any type of missed days or doctor's – doctor appointments or whatnot." Lopez Dep., Dkt. No. 21 Ex. B, 19:18-24; 20:11-14.

Upon review of the law and the evidence, the Court vacates this holding, concluding that its previous Order did not adequately examine whether there is "sufficient evidence demonstrating the falsity of [Walmart's] explanation, taken together with the prima facie case" to allow the jury to find that discrimination was a motivating cause of Quick's termination. *See Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 478 (5th Cir. 2015). In reexamining the age discrimination issue, the Court relies exclusively on the evidence produced for the Court prior to its June 2, 2017 Order.

A.  Legal Rule for TCHRA Age Discrimination Claims

The TCHRA prohibits an employer from discharging an employee on account of that employee's age. Tex. Lab. Code § 21.051. "Because 'there will seldom be eyewitness testimony as to the employer's mental processes,' . . . claims brought

---

[3] To establish a *prima facie* case of discriminatory treatment based on age, plaintiffs are required to prove: 1) "they are within the protected class"; 2) "they are qualified for the position"; 3) "they suffered an adverse employment decision"; and 4) "they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." *Leal v. McHugh*, 731 F.3d 405, 411 (5th Cir. 2013) (citing *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003)).

under [the TCHRA] typically rely on circumstantial evidence that is evaluated under the burden-shifting framework first articulated in *McDonnell Douglas* for Title VII claims of employment discrimination." *Goudeau*, 793 F.3d at 474 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

"Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Goudeau*, 793 F.3d at 474 (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (citation and quotation marks omitted)). "If the plaintiff successfully makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination." *Id.*

"[A]t the third and final 'pretext' stage of this analysis . . . the federal and state laws provide different standards." *Id.* (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 231 (5th Cir. 2015) ("The third step of the *McDonnell Douglas* analysis involves a different causation inquiry under the ADEA and the TCHRA.")). "Under the ADEA, the employee must 'prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Squyres*, 782 F.3d at 231 (quoting *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097). The ADEA thus requires a showing of "but-for" causation. *See Squyres*, 782 F.3d at 231; *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 176 (2009)). The TCHRA requires a less demanding showing as a plaintiff can prove discrimination at the third stage by establishing that "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439–40 (5th Cir. 2012) (quoting *Michael v. City of Dallas*, 314 S.W.3d 687, 691 (Tex. App.–Dallas 2010, no pet.)); *see also Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001).

B.    Analysis

Pursuant to the *McDonnell Douglas* framework, the Court first begins by examining whether Quick established a prima facie case of age discrimination. Walmart's motion for summary judgment argued that Quick had no evidence of pretext, and only raised the argument that Quick did not meet the elements of a prima facie case of age discrimination in its reply brief. In its reply brief, Walmart argues that Quick does not satisfy the second element of a prima facie age discrimination case—that she was "qualified for the position" —because at the time of her termination, "Quick could not work, and thus, she was not qualified." Dkt. No. 22 at 3. Walmart contends that "[Quick] concedes that she could not work in her position at the time of her termination, and there is no evidence that there was any other available position she could have performed." *Id*. (internal citations to Quick's deposition omitted). Quick at deposition testified as follows:

> Q. Okay. So is it your position that there is nothing you could have done as your job as a meat market associate with a 20-pound lifting restriction?
> A. Correct.
> Q. Okay. So you couldn't load items? You couldn't merchandise items on the deli shelves?
> A. Well, I could if the box – somebody lifted the box for me, but the problem was the bending over to get the box off the cart. And I could have done that maybe if it didn't weigh more than 20 pounds.

Quick Dep., Dkt. No. 20-2, 44:24-45:8.[4]

Because Walmart first raised its argument that Quick was not "qualified for the position" in its reply brief, Quick has had no opportunity to respond. Quick did happen to point out that her "Temporary Alternative Duty Assignment" dated

---

[4] Quick also testified that:
> Q. So my question to you, ma'am, though is is there any job at Wal-Mart you believe you can do since Dr. Borkowski put you on these restrictions in December 2014?
> A. I believe I could probably be the greeter.
> Q. Okay.
> A. And I requested that one at the at the time that they fired me.
> Q. Any other job you believe you could do at Wal-Mart?
> A. Under my condition, no, no.

Quick Dep., Dkt. No. 20-2, 11:17-12:2.

March 26, 2014, provided that Quick's temporary position would be "Normal job duties in the Meat Market but with the restrictions of not lifting or carrying more than 20 lbs," which may demonstrate that Walmart could have accommodated her lifting restrictions but that, in reality, it often required her to handle more than twenty pounds. *See* Dkt. No. 21 at 12; Dkt. No. 21 Ex. F; *see also* Dkt. No. 21 Ex. K (providing an email from Karen Neimeier ("Neimeier"), Walmart Personnel Coordinator, that Quick "is currently on a Leave of Absence at our store. She is trying to come back but she has a lifting restriction and that is not going to work in the area that she works. She is on LOA until she can return without restrictions.").[5]

For the purposes of this Order, the Court assumes, without deciding, that Quick has shown that she was a qualified for the position of meat market associate. *C.f. Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) ("Here, the district court assumed, without deciding, that Reed articulated a prima facie case [under the TCHRA]."). Therefore, the only element still in question regarding whether Quick has met her prima facie case of age discrimination is the fourth element—whether Quick was "discharged because of [her] age." *See Machinchick,* 398 F.3d at 350.

In considering whether a plaintiff has made a prima facie showing of discharge based on age, a court may evaluate "stray remarks" subject to the two different contexts in which the Fifth Circuit evaluates such remarks evincing discrimination. *See Goudeau*, 793 F.3d at 475.

"Where a plaintiff offers remarks as direct evidence, [the Fifth Circuit] appl[ies] a four-part test to determine whether they are sufficient to overcome summary judgment." *Reed*, 701 F.3d at 441 (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)) (holding that "[r]emarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2)

---

[5] Parties also vigorously dispute whether Quick was qualified for other tasks or positions within Walmart. *See* Pl.'s Br., Dkt. No. 21 at 12, 15 (alleging that other, younger associates were given lighter tasks when injured and that Lopez unsuccessfully tried to help Quick get transferred to his department); *see also* Lopez Dep., Dkt. No. 21 Ex. B at 12:20–15:10; Quick Dep., Dkt. No. 21 Ex. A at 115:8-18.

proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."); *see also Laxton v. Gap*, 333 F.3d 572, 583 n.4 (5th Cir. 2003) (noting that, in light of the Supreme Court's decision in *Reeves*, the *CSC Logic* test applies only when a remark is presented as direct evidence of discrimination).

"Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, [the Fifth Circuit] appl[ies] a more flexible two-part test." *Reed*, 701 F.3d at 441 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). "In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* (citing *Laxton*, 333 F.3d at 583); *see also Russell*, 235 F.3d at 226.

Quick points to the comments of Leija as evidence of pretext with regards to her age discrimination claim. *See* Dkt. No. 21 at 20–21. The record is unclear as to whether the comments are offered as direct or circumstantial evidence. However, because the comments made by Leija do not relate to the employment decision at issue (as would be required under the four-part test to determine whether the comment is sufficient to overcome summary judgment), the Court presumes that Quick offers the comments as circumstantial evidence.

"In a circumstantial case like this one, in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under [the] 'more flexible' standard." *Goudeau*, 793 F.3d at 475 (quoting *Reed*, 701 F.3d at 441). The comments Lopez testified were made by Leija directing Lopez to start hiring younger people because they are faster and do not have as many missed days, *see* Lopez Dep., Dkt. No. 21 Ex. B at 19:18–20:14, meet this standard because they are "age stereotyping remarks," *see Machinchick,* 398 F.3d at 353, and made by a store manager who had influence or leverage over hiring processes, *see* Neimeier Decl., Dkt. No. 20 Ex. B (providing that sometime after February 11, 2015, and before her termination on February 15, 2015, Quick came into the store and met

with Neimeier and Leija.). The Court therefore concludes that Quick has satisfied her initial burden.

The Court also finds that Walmart has satisfied its burden to articulate a legitimate, nondiscriminatory reason for Quick's termination. Neimeier states that Quick was terminated on February 15, 2015 because she failed to come to work after her Family and Medical Leave Act ("FMLA") leave request was denied on January 29, 2015, and after her doctor had released her to return to work on February 11, 2015. *See* Neimeier Decl., Dkt. No. 20 Ex. B at ¶ 10. In support of this nondiscriminatory reason for Quick's termination, Walmart includes as summary judgment evidence the FMLA leave request denial, *see* Dkt. No. 20, Ex. B(4), and a "Work Excuse" notification from Dr. John Borkowski ("Borkowski") on letterhead from "South Texas Bone & Joint," dated February 6, 2015, stating that Quick had been seen in his office that day and that "patient may return to work on 02/11/2015." *See* Dkt. No. 20 Ex. B(5). Walmart also points out that Quick does not dispute that Walmart received a notification from Borkowksi that she was released to return to work. Dkt. No. 20 at 11 (citing Quick Dep., Dkt. No. 20 Ex. A at 101:9–102:11).[6] Furthermore, the evidence is undisputed that during Quick's meeting with Neimeier and Leija after February 11, 2015, Neimeier and Leija informed her that because her FMLA leave request had been denied an because her doctor had

---

[6] Quick testified as follows:
    Q.    And this document states that you may return to work on 2/11/2015, correct?
    A.    Correct.
    Q.    Do you know if Wal-Mart ever received any work restriction – any return to work documents from anybody, any other doctor?
    A.    No.
    Q.    Or Dr. Borkowski after February 11th, 2015?
    A.    I went in and I had a – what you call it? I had an appointment. And I had, you know, verification that I had an appointment for Dr. Borkowski for the next week, okay, to show that I wasn't released. And they said well, we've got this and you're fired.
    Q.    Well, you can be released to work to return and still have an appointment with the doctor, right? Is that a yes?
    A.    Yes.
    Q.    Okay. So did you ever provide anything to Wal-Mart after February 11th, 2015 that said that you could not return to work as of February 11th, 2015?
    A.    No.
Quick Dep., Dkt. No. 20 Ex. A at 102:8–25

released her to return to work, she would need to return to work at that time. *See* Neimeier Decl., Dkt. No. 20 Ex. B at ¶ 10.

At this step of the *McDonnell Douglas* analysis, Quick must prove that the legitimate reasons offered by Walmart "were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Goudeau*, 793 F.3d at 476 (internal alteration omitted) (quoting *Reeves*, 530 U.S. at 147–48).

Quick has offered no evidence to show that Walmart's asserted justification is false as is required at the third stage of the *McDonnell Douglas* analysis. Though the TCHRA "requires a less demanding showing" at the third stage to provide discrimination than the but-for requirement of the ADEA, a plaintiff still must prove discrimination at the third stage by establishing that "either (1) the reason stated by the employer was a pretext for discrimination, or (2) the defendant's reason, while true, was only one reason for its conduct and discrimination is another motivating factor." *See Reed*, 701 F.3d at 439–40; *Michael v. City of Dallas*, 314 S.W.3d at 691; *Quantum Chem. Corp.*, 47 S.W.3d at 480.

The Supreme Court has instructed that the strength of the prima facie evidence may be considered at the pretext stage. *Goudeau*, 793 F.3d at 477 (citing *Reeves*, 530 U.S. at 148). While, as Quick argues, comments showing discriminatory animus are part of the analysis at the pretext stage, *see* Pl.'s Resp. Br., Dkt. No. 21 at 20; *see also Russell*, 235 F.3d at 225 n.9, stray remarks alone are not always sufficient in showing pretext. After all, "the pretext inquiry is asking the ultimate question whether a jury could find that discrimination caused the termination." *Goudeau*, 793 F.3d at 477 (citing *Reeves*, 530 U.S. at 142–43).

In *Goudeau*, the Fifth Circuit found that in the context of a TCHRA and ADEA claim, the plaintiff met his burden to undermine the genuineness of his employer's explanations when he contended that the warnings he was given involved infractions related to tasks not within his job duties and through evidence that he was not given his four written warnings until the actual date he was fired, even though the warnings related to events occurring on different dates. *Id.* at 476–77. The Fifth Circuit concluded "that the doubts that Goudeau has raised about the warnings, combined with the ageist comments that are potentially corroborated by the firing of both Goudeau and Fisher, would allow a jury to conclude that age was the reason for the termination." *Id.* at 477.

In this case, the comment allegedly made by Leija to Lopez is the only evidence to which Quick can point in support of showing that she was discharged because of age. *C.f. Goudeau*, 793 F.3d at 476 ("And the comments are not the only evidence Goudeau can point to in support of showing that he was discharged because of age. Perkins also terminated one of the two 'old fart' coworkers whom he allegedly told Goudeau he was going to fire after asking about their age; the second 'old fart' was terminated by HR for failing an alcohol test."). Additionally, unlike in *Goudeau*, where the plaintiff had been hired eighteen years prior to his termination, *id.* at 472, Quick was hired at age sixty-four and terminated less than two years later. *See* Def.'s Mot. ("[I]t is undisputed that Wal-Mart hired Quick when she was 64 years old. This is hardly evidence of discriminatory animus.").

In *Reeves*, the Supreme Court held that a plaintiff's prima facie case of discrimination combined with sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision is adequate to sustain a finding of liability for intentional discrimination. *Reeves*, 530 U.S. at 140, 147–48 ("[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.").[7] In that case,

---

[7] The Court recognizes that *Reeves* is an ADEA case, rather than a TCHRA case. However, because the district court in that case instructed the jury pursuant to a "motivating factor" standard, *see*

the employer contended that it had fired Reeves due to his failure to maintain accurate attendance records. *Id.* at 138. Reeves "introduced evidence that he had accurately recorded the attendance and hours of the employees under his supervision, and that [the director of manufacturing] . . . had demonstrated age-based animus in his dealings with petitioner." *Id.*

Here, Quick has offered no such sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation, and therefore has not met its burden under *McDonnell Douglas*. *See Reeves*, 530 U.S. at 143 ("Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' ") (quoting *Burdine*, 450 U.S. at 253). Though "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom on the issue of whether the defendant's explanation is pretextual," *id.* (internal quotations and citations omitted), Quick cannot meet her ultimate burden to persuade the trier of fact that Walmart terminated her in part because of her age. *C.f. Reeves*, 530 U.S. at 144–45 ("Petitioner . . . made a substantial showing that respondent's explanation was false. First, petitioner offered evidence that he had properly maintained the attendance records. Most of the timekeeping errors cited by respondent involved employees who were not marked late but who were recorded as having arrived at the plant at 7 a.m. for the 7 a.m. shift. . . . Petitioner similarly cast doubt on whether he was responsible for any failure to discipline late and absent employees. . . . Further, [the employer] conceded that there had never been a union grievance or employee complaint arising from petitioner's recordkeeping, and that the company had never calculated the amount of overpayments allegedly attributable to petitioner's errors.").

---

*Reeves*, 530 U.S. 138–39, and because it was decided before *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), *Reeves* is instructive on the kind and amount of evidence necessary to sustain a jury's verdict that an employer unlawfully discriminated on the basis of age in the TCHRA context.

In sum, in *Reeves*, the Supreme Court held that "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147 (emphasis in original). However, as the Supreme Court stated,

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148 (emphasis in original) (citing *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1291–1292 (D.C. Cir. 1998).

Quick's case falls into this category. The record conclusively reveals another, nondiscriminatory reason for Walmart's decision and Quick has created only a weak issue of fact as to whether Walmart's reason was untrue.[8] "At the end of the day, the pretext inquiry asks whether there is sufficient evidence 'demonstrating the falsity of the employer's explanation, taken together with the prima facie case,' " to allow the jury to find that discrimination was a factor of Quick's termination. *See Goudeau*, 793 F.3d at 478 (quoting *Sandstad*, 309 F.3d at 897). Quick has not presented such sufficient evidence.

---

[8] In *Reed*, a case brought by a plaintiff asserting a TCHRA age discrimination claim, the Fifth Circuit held that though under the TCHRA a plaintiff need only show that age was a "motivating factor" in the defendant's decision, evidence on the record was insufficient to create a genuine issue of material fact because Reed only pointed to stray remarks. *Reed*, 701 F.3d at 440. The Fifth Circuit held that the "stray remarks" at issue—names leveled at the plaintiff like "old man," "old fart," "pops," and "grandpa"—were "sporadic, in large part untethered to specific speakers or times, and attributed to harassers who had no responsibility for, or influence over, Reed's termination." *Id.* at 441-42. Here, though Leija did appear to have influence over Quick's termination, his alleged comments to Lopez occurred after Quick had been hired and did not refer specifically to Quick.

### III.   Conclusion

Pursuant to its authority under Federal Rule of Civil Procedure 54(b), this Court **VACATES IN PART** its Memorandum and Order of June 2, 2017, Dkt. No. 25, and finds that there is no genuine issue of material fact on Quick's age discrimination claim regarding her termination. The Court therefore **GRANTS** Walmart's motion for summary judgment, Def.'s Mot., Dkt. No. 20, on Quick's age discrimination claim.

As summary judgment has been **GRANTED** for Walmart on all claims, the Court **TERMINATES** all settings in this case. The Court further **DIRECTS** the Clerk of Court to close the case upon entry of the accompanying final judgment.

SIGNED this 11th day of August, 2017.

_____
Hilda Tagle
Senior United States District Judge